justice of the peace, nor presiding officer of any inferior judicature or commission, can *sit* in any cause or proceeding in which he has been of *counsel.'* . . The word 'sit,' when used in the statute, is synonymous with the word 'preside'; and it is fair, in construing it, to hold that the language intended that *any act done or order made* in the case *of a judicial nature is prohibited.* . . It may therefore, we think, be conceded that while the statute *forbids any judicial officer* who has been of *counsel* in a particular case *from* thereafter *presiding* in the trial of such case, such prohibition is restricted to hearing the case, *and to making or passing any order in relation thereto as may be judicial in its nature."* (Italics ours.) This ruling was based squarely on the fact that the presiding judge had been of counsel. If he has been of counsel, the statute, except as provided therein, forbids his "sitting" or "presiding" in the case, "or passing any order in relation thereto as may be judicial in its nature;" and it is not denied, in the instant case, that the judge had been of counsel for the State, participated as counsel in the case, and did thereafter preside as judge in the case, and that the judgment of forfeiture was an "order judicial in its nature."

Inasmuch as the presiding judge was disqualified to try this case or to pass orders therein, and his disqualification was not waived, the trial thereafter went for naught. See *Shuford* v. *Shuford,* 141 *Ga.* 408 (9), 409 (81 S. E. 115) ; *State Mutual Life Ins. Co.* v. *Walton,* 142 *Ga.* 765 (3), 766 (83 S. E. 656) ; *Dobbins* v. *City of Marietta,* 148 *Ga.* 467 (2), 468 (97 S. E. 439).

The court erred in sustaining the demurrer and dismissing the petition and motion to vacate and set aside the judgment absolute upon the forfeiture of the criminal recognizance.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*

---

17867.  JELKS *v.* THE STATE.

LUKE, J. On circumstantial evidence the defendant was convicted of possessing intoxicating liquor. Under the facts of the case it could be reasonably concluded that the small quantity of whisky found, in the

---

Criminal Law, 16 C. J. p. 764, n. 54.

Intoxicating Liquors, 33 C. J. p. 757, n. 74; p. 761, n. 53; p. 762, n. 54, 55, 57.

absence of the accused, in an outhouse on his premises, belonged to some one other than himself; and, since the evidence does not exclude every reasonable hypothesis save that of the guilt of the accused, the court erred in overruling the motion for a new trial. See *Humphrey* v. *State*, 25 *Ga. App.* 244 (102 S. E. 911); *Turner* v. *State*, 25 *Ga. App.* 234 (102 S. E. 847).

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*

DECIDED APRIL 12, 1927.

Possessing intoxicating liquor; from Pulaski superior court— Judge Graham. December 14, 1926.

Officers searching for whisky and whisky stills, it was testified, found in a swamp, about a mile from the residence of Frank Jelks (the defendant), several parts of a recently used still, and then went to his residence and to an outhouse on the premises; the house was locked and the only person there was a woman who said she was the wife of Frank Jelks, and from her they got the key of the house, and there found several jugs, in one of which was a pint of whisky, and found a funnel and three barrels; one of the barrels had recently (from its fresh appearance) contained whisky mash. "This house had been used years ago as a commissary by one Jim Johnson."

*D. R. Pearce,* for plaintiff in error.

*M. H. Boyer, solicitor-general,* contra.

---

## 17868.   TAYLOR *v.* THE STATE.

1. There is no merit in either of the special grounds of the motion for a new trial which are based upon alleged errors in the charge to the jury.

2. "Under the evidence in this case, there was no reasonable theory upon which the defendant could have based his contention that, if he was guilty of any crime at all, it was involuntary manslaughter. Even if such theory could have been predicated upon the statement of the defendant, there was no error in omitting to charge the jury what would be the form of their verdict in the event they found the defendant guilty of involuntary manslaughter, no request to charge on this subject having been made by defendant's counsel."

3. Under the facts of the case there is no merit in that ground of the motion for a new trial which alleges that the court erred "in that the defendant and her attorneys did not have time and were not given an

Criminal Law, 16 C. J. p. 1056, n. 20; p. 1057, n. 26; p. 1098, n. 93; p. 1149, n. 91; p. 1177, n. 41; p. 1273, n. 4; p. 1316, n. 43.

Homicide, 29 C. J. p. 1128, n. 14; p. 1129, n. 15; p. 1149, n. 38, 41; 30 C. J. p. 141, n. 50; p. 317, n. 69.